UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                                          Case No. 10-20941-AJC

Biscayne Park LLC,                                      Chapter 11
Debtor
_____/

**MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER:
(A) APPROVING BID PROCEDURES RELATING TO SALE OF THE
DEBTOR'S ASSETS; (B) APPROVING THE FORM AND MANNER OF
NOTICE OF SALE BY AUCTION; (C) AUTHORIZING THE SALE OF
CERTAIN ASSETS OF DEBTOR OUTSIDE THE ORDINARY COURSE OF
BUSINESS AT AUCTION, FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES AND INTERESTS; (D) SCHEDULING A HEARING
TO CONSIDER THE SALE; AND (E) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor-in-possession (the **"Debtor"**) hereby moves the

Court (the **"Motion"**), for entry of an order, pursuant to sections 105(a), and 363 of title 11 of

the United States Code, 11 U.S.C. §§ 101, *et seq.* (the **"Bankruptcy Code"**) and Rules 2002,

6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), (a)

approving the procedures (the **"Bid Procedures"**) substantially in the form annexed hereto as

**Exhibit "A"** with respect to the proposed sale (the **"Sale"**) of substantially all of the assets of the

Debtor (as discussed in greater detail below, the **"Assets"**); (b) approving the form and manner

of notice of an auction for the Assets (the **"Auction"**); (c) authorizing the sale free and clear of

liens, claims, encumbrances, and interests at the Auction; (d) scheduling a hearing (the **"Sale**

**Hearing"**) on the Sale and setting objection and bidding deadlines with respect to the Sale; and

(e) granting related relief.  In support of this Motion, the Debtor respectfully states as follows:

**BACKGROUND**

1.      On April 26, 2010 (the **"Petition Date"**), the Debtor filed a voluntary petition for

relief under the Bankruptcy Code (the "**Case**").

2.      The Debtor has continued in possession of its properties and is operating and managing its businesses as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On July 2, 2010, Joel Tabas (the "**Examiner**") was appointed to perform certain duties in the Case.  No creditors' committee has been appointed in this Case.

4.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. § 1408.  This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory predicates for the relief sought herein are section 105(a) and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 9014.

6.      Before the Petition Date, on or about November 9, 2006, the Debtor entered into a Mortgage Note with Madison Realty Capital, L.P. ("**Madison**"), pursuant to which Madison made a loan to Debtor in the original principal amount of $8,150,000.00 (the "**Loan**").  The Note was secured by, among other things, a Mortgage and Security Agreement between Debtor, as Mortgagor, and Madison, as Mortgagee, and an Assignment of Leases and Rents made by Debtor in favor of Madison. As a result, Madison holds, among other things, a first priority, perfected mortgage and assignment of rents on substantially all of the assets of the Debtor's estate (the "**Assets**"), which primarily consist of the "Little Farm Trailer Park" located in El Portal, Florida and the adjacent property.

7.      On August 16, 2010, a *Final Order Authorizing Debtor to (A) Use Cash Collateral and (B) Grant Certain Liens and Provide Adequate Protection to Madison Realty Capital LP; and Granting Conditional Relief from Stay on the Termination Date* was entered by this Court (Docket No. 73) (the "**Cash Collateral Order**").   The Cash Collateral Order

authorized the Debtor to use cash collateral subject to certain conditions, including the appointment of a property manager.   Through the Cash Collateral Order, among other things, the Debtor stipulated and the Court found that:  (a) Madison has an allowed claim in an amount not less than $10,607,711.54 plus accrued and accruing interest, attorneys fees and expenses; and (b) Madison's liens constitute first priority liens on the Collateral, subject only to certain "Permitted Liens," as that term was defined in the Cash Collateral Order.  The Cash Collateral Order also granted Madison the right to credit bid all or any of the full amount of its claim against the Debtor's estate at the sale or auction of the Assets (a "**Credit Bid**").

8.     In light of the Debtor's inability to obtain capital to improve and continue to operate the Assets, the Debtor, in the exercise of its reasonable business judgment, has determined that the most effective way to preserve the value of the Assets for the benefit of its creditors is to conduct an Auction of the Assets through a sale pursuant to section 363 of the Bankruptcy Code.

## RELIEF REQUESTED

9.     By this Motion, the Debtor seeks the entry of an order of this Court: (a) approving the Bid Procedures with respect to the Sale of the Assets; (b) approving the form and manner of notice of the Auction; (c) authorizing the Sale free and clear of liens, claims, encumbrances, and interests, (d) scheduling the Sale Hearing and setting objection and bidding deadlines with respect to the Sale; and (e) granting related relief.

## PROPOSED BID PROCEDURES

10.     The Debtor believes that it is imperative that it promptly moves forward in hopes that it will generate strong interest for the Assets.  In addition, because the Debtor has little to no liquidity, the Debtor has no choice but to sell the Assets in an expedited manner in order to preserve and maximize the value of its estate.  Accordingly, the Bid Procedures (as summarized

below) were developed consistent with the Debtor's need to expedite the sale process, but with the objective of promoting active bidding that will result in the highest or best offer for the Assets. Moreover, the Bid Procedures reflect the Debtor's objective of conducting the Auction in a controlled, but fair and open, fashion that promotes interest in the Assets by financially-capable, motivated bidders who are likely to close a transaction.

11.    Because the Debtor does not have an open offer from any prospective purchaser, it initially proposes to conduct the Sale, as an auction, without an initial bidder or stalking-horse purchaser. However, the Debtor reserves the right to select a stalking horse bidder (the "**Stalking Horse Bidder**"), subject to Madison's consent in its sole discretion, should it deem necessary in its reasonable business judgment to maximize the value of the sale. The Debtor seeks to conduct an open sale process pursuant to which the winning bidder will enter into an asset purchase agreement acceptable to Madison in its sole discretion for the purchase of substantially all of the Assets, free and clear of liens, claims, and encumbrances, with such liens, claims, and encumbrances to attach to the Sale proceeds. Consistent with the proposed Bid Procedures, Madison may be entitled to Credit Bid its entire claim pursuant to section 363(k) of the Bankruptcy Code.

### A.    *Bid Procedures*

12.    Attached to this Motion are the proposed Bid Procedures.[1] The Bid Procedures are typical for asset sales of this size and nature, include provisions for consultation with Madison, require the making of a deposit, and require a bidder to be a "**Qualified Bidder**" as defined in the Bid Procedures.

---

1 Capitalized terms used and not defined herein shall have the meanings ascribed to them in the Bid Procedures attached hereto as Exhibit "A".

13.     The following paragraphs in this section summarize key provisions of the Bid Procedures, but are qualified in their entirety by reference to the actual Bid Procedures.

    a.    <u>Participation Requirements</u>.

        i.    <u>Confidentiality Agreement</u>.    An executed confidentiality agreement in form and substance reasonably acceptable to the Debtor (each a **"Confidentiality Agreement"**); and

        ii.    <u>Proof of Financial Ability to Perform</u>.  The most current audited and latest unaudited financial statements (collectively, the **"Financials"**) of the potential bidder (the "**Potential Bidder**"), or, if the Potential Bidder is an entity formed for the purpose of the Sale, Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure evidencing the Potential Bidder's ability to close the Sale, the sufficiency of which shall be determined by the Debtor in its reasonable discretion, with the consent of Madison in its sole discretion..

    b.    <u>Qualified Bid</u>.  Except as otherwise agreed by the Debtor and Madison in its sole discretion.

        i.    <u>Agreement</u>.  A Bid must include fully executed transaction documents pursuant to which the Qualified Bidder proposes to effectuate the contemplated Sale.  All Bids must be in cash and indefeasibly and finally pay Madison's claim in full at closing.

        ii.    <u>Contingencies</u>.  A Bid may not be conditioned on obtaining internal approval, obtaining financing or on the outcome or review of due diligence after the Auction, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions.

        iii    <u>Authorization to Bid</u>.  A Bid shall include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Sale.

        iv.    <u>Good Faith Deposit</u>.  Each Bid must be accompanied by a cash deposit in an amount equal to ten percent (10%) of the highest proposed purchase price offered by the Qualified Bidder in its Qualified Bid (the **"Good Faith Deposit"**).

        v.    <u>No Fees Payable to Qualified Bidder</u>.  A Bid may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment (unless such

bidder is a Stalking Horse Bidder).  Moreover, by submitting a Bid a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bidding Procedures.

vi.     <u>Financing Sources</u>.  A Bid must contain evidence of the ability to consummate the Sale satisfactory to the Debtor with appropriate contact information for all such financing sources.

vii.    <u>Other Evidence</u>.  Each Bid must contain evidence satisfactory to the Debtor and Madison that the bidder is reasonably likely (based on availability of financing, experience and other considerations) to be able to timely consummate a purchase of the Assets if selected as the Successful Bidder.

c.     <u>Bid Deadline</u>.  The deadline for submitting bids by a Qualified Bidder shall be November 30, 2010, at 12:00 p.m. (Eastern Time) (the **"Bid Deadline"**).  A Bid received after the Bid Deadline shall not constitute a Qualified Bid (as defined below).

d.     <u>Auction</u>.  In the event that the Debtor receives at least one (1) Qualified Bid by the Bid Deadline, which Qualified Bid may be that of an initial bidder or Stalking Horse Purchaser, the Debtor shall conduct an Auction of the Assets to determine the highest and otherwise best bid with respect to the Assets.  No later than December 1, 2010, at 4:00 p.m. (prevailing Eastern time), the Debtor will notify all Qualified Bidders of (i) the highest or otherwise best Qualified Bid, (the **"Baseline Bid"**) and (ii) the time and place of the Auction.  The Auction shall commence on December 2, 2010, at 2:00 p.m. at Greenberg Traurig, LLP, 1221 Brickell Avenue, Miami, FL 33131.

e.     <u>Sale Hearing</u>.  The Sale Hearing shall be conducted by the Bankruptcy Court on or before December 3, 2010.

14.     Notwithstanding any provisions to the contrary herein, Madison is entitled to Credit Bid all or a portion of its claims against the Debtor, without otherwise complying with the Bid Procedures, to the fullest extent permissible under section 363(k) of the Bankruptcy Code, and such bid shall constitute a Qualified Bid without any need for Madison to comply with any of the Participation Requirements or Bid Procedures.

15.     The Debtor, with the consent of Madison in its sole discretion, expressly reserves the right to modify the relief requested herein, including, but not limited to, the selection of an

initial bidder or stalking-horse bidder. Moreover, the Debtor (but solely with the consent of Madison in its sole discretion) reserves the right, upon notice to all Notice Parties and those parties that have demonstrated an interest in bidding on the Assets, to: (a) waive terms and conditions set forth herein with respect to any or all potential bidders, (b) impose additional terms and conditions with respect to any or all potential bidders, (c) extend the deadlines set forth herein, (d) cancel the sale of the Assets and/or Sale Hearing in open court without further notice; (e) amend the Bid Procedures as they may determine to be in the best interests of their estates or (f) withdraw the Motion at any time with or without prejudice.

**B.**    *Notice of Auction*

16.    The Debtor seeks to have the Auction scheduled for a date no later than December 2, 2010. The value of the Assets may decline substantially if the Sale process is not completed on an expedited basis.

17.    Not later than three business days after the entry of the order approving the Bid Procedures (the "**Bid Procedures Order**"), the Debtor will serve copies of the Sale Notice, substantially in the form attached hereto as **Exhibit "B"** (the "**Sale Notice**"), the Bid Procedures, and the Bid Procedures Order by mail, postage prepaid to: (a) all entities known to have expressed a *bona fide* interest in acquiring the Assets (by overnight mail); (b) counsel to Madison, (c) the Office of the United States Trustee for the Southern District of Florida; (d) known entities holding or asserting a security interest in or lien against any of the Assets; (e) taxing authorities whose rights may be affected by a sale of the Assets; (f) all government agencies required to receive notice of proceedings under the Bankruptcy Rules; (g) the Debtor's twenty (20) largest unsecured creditors; and (h) all parties that have requested notice pursuant to Bankruptcy Rule 2002 as of the date prior to the date of entry of the Bid Procedures Order.

18.     The Debtor further requests, pursuant to Bankruptcy Rule 9014, that objections, if any, to the proposed Sale: (a) be in writing; (b) comply with the Bankruptcy Rules; (c) be filed with the Clerk of the United States Bankruptcy Court for the Southern District of Florida; and (d) be served so as to be received, no later than December 1, 2010, by: (i) the Debtor; (ii) counsel to the Debtor; (iii) counsel to Madison; (iv) the Office of the United States Trustee; (v) counsel to any Stalking Horse Bidder; and (vi) all parties entitled to notice pursuant to Bankruptcy Rule 2002.

19.     Not later than thirty (30) days after entry of the Bid Procedures Order, the Debtor will twice publish the Sale Notice in the national edition of *The Wall Street Journal* and in *The Miami Herald*..

**C.     *Reservation of Rights***

20.     In order to maximize the value of the Assets to the Debtor's estate, the Debtor reserves the right prior to the Auction to enter into an agreement, with the consent and in form and substance acceptable to Madison in its sole discretion, for the sale of the Assets with a Stalking Horse Bidder.  As consideration for the value of any such "stalking-horse" bid(s), in the event that the Bankruptcy Court should determine any third party's competitive bid as a higher and better offer, then, subject to the Bankruptcy Court's approval, the Debtor proposes to pay the prospective "stalking-horse" bidder a break-up fee in an amount calculated as a percentage of its aggregate bid in an amount to not exceed 2% of said Stalking Horse Bidder's initial bid.

**BASIS FOR RELIEF REQUESTED**

**A.     *The Sale is Within the Sound Business Judgment of the Debtor and Should Be Approved***

21.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary

course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan. However, courts in this Circuit and others have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtors. *In re Parkstone Med. Info. Sys.*, 2001 WL 36189822 at *1 (Bankr. S.D. Fla. Oct. 16, 2001) (Hyman, J.); *In re Ionosphere Clubs, Inc.*, 184 B.R. 648, 653 (S.D.N.Y. 1995) ("courts consistently have acknowledged that assets of an estate can be sold prior to the confirmation, or even filing, of a plan").; *In re Lorraine Brooke Associates, Inc.*, 2007 WL 2257608 at *4 (Bankr. S.D. Fla. Aug. 2, 2007) (Cristol, J.) (applying business judgment test in assessing 363(b) motion in chapter 7 proceedings) (citing *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 175-176 (D. Del. 1991)); *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

22. The "sound business judgment" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely: (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business; (b) that adequate and reasonable notice has been provided to interested persons; (c) that the debtors have obtained a fair and reasonable price; and (d) good faith. *See, In re Fountain Imaging of N. Miami Beach, LLC,* No. 06-12686, Docket Nos. 215-217 (Bankr. S.D. Fla. Dec. 14, 2006); *Abbotts Dairies,* 788 F.2d 143; *Titusville Country Club v. Pennbank (In re Titusville Country Club),* 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd,* 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). In this case, the Debtor submits that the decision to proceed with the Sale and the Bid Procedures related thereto are based upon its sound business judgment and should be approved. A debtor's showing of a sound business purpose need not be

unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.,* 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. *Lionel,* 722 F.2d at 1071; *Montgomery Ward,* 242 B.R. at 155 (approving funding of employee incentive and severance program; business purpose requirement fulfilled because stabilizing turnover rate and increasing morale were necessary to successful reorganization).

23.     Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. *In re Fesco Plastics Corp.,* 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus),* 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See, e.g., Chinichian v. Campolongo (In re Chinichian),* 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.,* 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

24.    The Debtor submits that sound business justification exists to sell the Assets to the Successful Bidder pursuant to the Bid Procedures.  Absent a sale of the Assets, the Debtor lacks sufficient cash resources to continue to operate the business and pay their debts as they are due, and the Assets will continue to decline in value absent a prompt sale.  Thus, the relief sought herein is not only reasonable, but necessary, to maximize the value of the Debtor's estates for the benefit of their stakeholders.

25.    The notice of Auction is designed to provide adequate notice to all potentially interested parties, including those who have previously expressed an interest in purchasing the Assets.  Indeed, the Debtor has and will continue to market the Assets and will solicit the most likely interested competing bidders.  The Debtor will retain a property broker to assist in the marketing of the Assets, solicit interested competing bidders, disseminate due diligence information and assist in the auction process.  Accordingly, the proposed Sale satisfies the second prong of the *Abbotts Dairies* standard.

26.    Moreover, the Bid Procedures are designed to maximize the value received for the Assets.  The process proposed by the Debtor allows for a timely and efficient auction process given the circumstances facing the Debtor, while providing bidders with ample time and information to submit a timely bid and perform diligence.  The Bid Procedures are designed to ensure that the Assets will be sold for the highest or otherwise best possible purchase price.  The Debtor is subjecting the value of the Assets to market testing and permitting prospective purchasers to bid on the Assets.  The proposed Sale will be further subject to a market check through the solicitation of competing bids in a court-supervised Auction process as set forth in the Bid Procedures.  Accordingly, the Debtor and all parties in interest can be assured that the consideration received for the Assets will be fair and reasonable, and, thereby satisfying the third

11

prong of the *Abbotts Dairies* standard.   As discussed below, the "good faith" prong of the *Abbotts Dairies* standard is also satisfied.

**B.      The Sale is Proposed in "Good Faith" under Section 363(m) of the Bankruptcy Code**

27.      The Debtor requests that the Court find that any Successful Bidder (including, without limitation, Madison) is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale.

28.      Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

29.      Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.   By its terms, section 363(m) of the Bankruptcy Code applies to sales of interests in tangible assets, such as the Assets.

30.      The Debtor submits, and will present evidence at the Sale Hearing, if necessary, that as set forth above, the Sale was an arm's-length transaction, in which the Successful Bidder acted in good faith.   For example, the Auction is an open sale process and the Debtor will have separate legal counsel negotiate the Sale transaction on its behalf.   Accordingly, the Debtor requests that the Court make the finding at the Sale Hearing that the Successful Bidder has purchased the Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code.

### C.    The Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code

31.    Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell all or any part of its property free and clear of any and all liens, claims or interests in such property if: (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a bona fide dispute; or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. § 363(f); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met).

32.    Madison has consented to the form of the Bid Procedures in substantially the form attached hereto and to the release of its liens in the Assets, subject to the Cash Collateral Order and the conditions set forth herein.

33.    The Debtor expects that they will satisfy, at minimum, the second and fifth of the requirements of section 363(f) of the Bankruptcy Code, if not others as well, approving the sale of the Assets free and clear of all adverse interests is warranted.  Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f).  *See, e.g., In re Trans World Airlines, Inc.,* 2001 WL 1820325 at *3, 6 (Bankr. D. Del. March 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.),* 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).  As a result, the Assets may be sold free and clear of liens.

***E.      Relief from the Fourteen Day Waiting Periods Under Bankruptcy Rules 6004(h) is Appropriate***

34.      Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  The Debtor requests that the Sale Order be effective immediately by providing that the fourteen (14) day stay under Bankruptcy Rules 6004(h) is waived.

35.      The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).  Although Bankruptcy Rules 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the stay period, Collier on Bankruptcy suggests that the stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy 15th Ed. Rev., ¶6064.09 (L. King, 15th rev. ed. 1988).  Furthermore, Collier's provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  *Id.*

36.      As described above, time is clearly of the essence, since the Debtor has insufficient cash to operate on a prolonged basis, and the financial and real-estate crisis and over-all market uncertainty and volatility is resulting in a decline on the value of the Assets.  Since the closing of the Sale promptly is of critical importance, the Debtor hereby requests that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h).

## NO PRIOR REQUEST

37.      No prior Motion for the relief requested herein has been made to this or any other court.

## **NOTICE**

38.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) counsel to the Debtor's prepetition secured lenders; (c) counsel to the Debtor's postpetition secured lenders; (d) creditors holding the twenty (20) largest unsecured claims as set forth in the Debtor's petitions; (e) the Office of the United States Attorney General for the Southern District of Florida; (f) the International Revenue Service; (g) the Securities and Exchange Commission; and (h) those parties requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

[Signature on Next Page]

WHEREFORE, the Debtor respectfully requests (i) an order: (a) approving the Bid Procedures with respect to the Sale of the Assets; (b) approving the form and manner of notice of the Auction; (c) authorizing the Sale free and clear of liens, claims, encumbrances, and interests, (d) scheduling the Sale Hearing and setting objection and bidding deadlines with respect to the Sale; and (e) granting related relief; and (ii) such other and further relief as the Court deems just and proper.

JOEL M. ARESTY, P.A.
Counsel for Debtor
**Offices at Sailboat Cay**
**13499 Biscayne Blvd**
**STE T3 (18th Floor)**
**North Miami, FL 33181-2061**
**Phone: 305-904-1903**
**Fax: 305-723-7893**
E-mail: Aresty@Mac.com
By:/s/ Joel M. Aresty, Esq
Fla. Bar No. 197483

## Exhibit "A"

[Bid Procedures]

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                          Case No. 10-20941-AJC

Biscayne Park LLC,                              Chapter 11
Debtor

_____/

## BID PROCEDURES

The above-captioned debtor and debtor-in-possession (the **"Debtor"**) has filed a chapter 11 case pending in the United States Bankruptcy Court for the Southern District of Florida (the **"Bankruptcy Court"**), under Case No. 10-20941-AJC.  By motion dated [          ], 2010 (the **"Motion"**), the Debtor seeks, among other things, approval of the process and procedures set forth below (the **"Bid Procedures"**) to effectuate the sale of the Assets (the **"Sale"**).  The Bid Procedures are designed to facilitate a full and fair bidding process to maximize the value of the Assets for the benefit of the Debtor's creditors and their bankruptcy estates.

On or before December 3, 2010, as further described below, the Bankruptcy Court shall conduct a hearing (the **"Sale Hearing"**) at which time the Debtor shall seek entry of an order (the **"Sale Order"**) authorizing and approving the sale of the Assets (the **"Proposed Sale"**) to the Successful Bidder (defined below), or any Stalking Horse Bidder (as defined below), as applicable.

The Sale contemplated herein is subject to competitive bidding and approval by the Bankruptcy Court pursuant to sections 363 and 365 of title 11 of the United States Code (the **"Bankruptcy Code"**).

*Participation Requirements*

Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, each person (a **"Potential Bidder"**) must first deliver (unless previously delivered) to (i) the Debtor, (ii) counsel for the Debtor, and (iii) counsel to Madison Realty Capital LP, as first lien lender ("**Madison**"),  no later than November 23, 2010, the following items (collectively, the **"Participation Requirements"**):

    (a)    Confidentiality Agreement.  An executed confidentiality agreement in form and
           substance reasonably acceptable to the Debtor (each, a **"Confidentiality
           Agreement"**);

    (b)    Identification of Potential Bidder.  Identification of the Potential Bidder and any
           principals, and representatives thereof who are authorized to appear and act on
           their behalf for all purposes regarding the contemplated Sale; and

(c)    <u>Proof of Financial Ability to Perform</u>.  Written evidence that the Debtor and the Madison can reasonably conclude the Potential Bidder's financial ability to close the contemplated Sale and provide adequate assurance of future performance under all contracts to be assumed in such contemplated Sale.  Such information should include, *inter alia*, the following:

(i)    the Potential Bidder's current financial statements (audited if they exist); and

(ii)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor and Madison demonstrating that such Potential Bidder has the ability to close the contemplated Sale; <u>provided</u>, <u>however</u>, that the Debtor shall determine, (with the consent of the Madison in its sole discretion), whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of the Potential Bidder's financial qualifications, <u>provided</u>, <u>however</u>, that in lieu of a Potential Bidder's financial statements, the Debtor (with the consent of Madison in its sole discretion) may accept other information that reasonably demonstrates the Potential Bidder's financial condition.

*Access to Due Diligence Materials*

Upon satisfaction of the Participation Requirements, the Debtor will afford each Potential Bidder due diligence access to the Assets; <u>provided</u>, <u>however</u>, that (i) the Debtor (with the consent of the Madison in its sole discretion) shall have the right to reasonably limit the due diligence provided to competitors; and (ii) the Debtor will have no obligation to provide due diligence access after the Bid Deadline (defined below).  The Debtor will designate an employee or other representative to coordinate all reasonable requests from Potential Bidders for additional information and due diligence access.

*Designation as Qualified Bidder*

A **"Qualified Bidder"** is a Potential Bidder that delivers the documents satisfying the Participation Requirements described in subparagraphs (a)-(c) above, and that the Debtor (with the consent of Madison in its sole discretion) determines is likely to submit a *bona fide* offer and to be able to consummate a sale if selected as a Successful Bidder (defined below). Notwithstanding anything to the contrary contained herein, Madison shall be a Qualified Bidder and any bid thereof shall be a Qualified Bid without complying with the Participation Requirements or Bid Procedures.  As soon as is practicable, upon receipt of such documents, the Debtor shall notify the Potential Bidder that such Potential Bidder is a Qualified Bidder.  Any Stalking Horse Bidder is a Qualified Bidder.  Notwithstanding any provisions to the contrary herein, Madison is entitled to credit bid all or a portion of its claims against the Debtor, without otherwise complying with the Bid Procedures, to the fullest extent permissible under section 363(k) of the Bankruptcy Code.

2

*Bid Deadline*

The deadline for submitting bids by a Qualified Bidder shall be November 30, 2010, at 12:00 p.m. (Eastern Time) (the **"Bid Deadline"**).  A Bid (as defined below) received after the Bid Deadline shall not constitute a Qualified Bid (as defined below).

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a **"Bid"**) shall deliver written copies of its Bid to: (i) counsel to the Debtor; (ii) counsel to the Office of the United States Trustee; (iii) counsel to any Stalking Horse Bidder; and (iv) counsel to Madison (collectively, the **"Notice Parties"**), by the Bid Deadline.

*Determination of Qualified Bid Status*

To be eligible to participate in the bidding process, except as otherwise agreed by the Debtor and Madison in its sole discretion, each Qualified Bidder must deliver to the Debtor a written offer to be received by the Bid Deadline and compliant with each of the following conditions:

(a)  <u>Agreement</u>.  A Bid must include fully executed transaction documents (the "**Agreement**"), pursuant to which the Qualified Bidder proposes to effectuate the contemplated Sale.  All Bids must be in cash and must indefeasibly and fully pay Madison's claim in full at closing (other than any Credit Bid of Madison).

(b)  <u>Assets</u>.  Each Bid shall be for all of the Assets or such portion of the Assets as the Qualified Bidder wishes to purchase.

(c)  <u>Contingencies</u>.  A Bid may not be conditioned on obtaining internal approval, obtaining financing or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the Closing of specified representations and warranties or the satisfaction in all material respects at the Closing of specified conditions.

(d)  <u>Authorization to Bid</u>.  A Bid shall include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Agreement.

(e)  <u>Good Faith Deposit</u>.  Each Bid (other than a credit bid by Madison) must be accompanied by a cash deposit in an amount equal to ten percent (10%) of the cash portion of the highest proposed purchase price offered by the Qualified Bidder in its Qualified Bid (the **"Good Faith Deposit"**).

(f)  <u>No Fees payable to Qualified Bidder</u>.  A Bid may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment (other than a Bid by any Stalking Horse Bidder).

(g)  <u>Financing Sources</u>.  A Bid must contain evidence of the ability to consummate the Sale satisfactory to the Debtor with appropriate contact information for all such financing sources.

3

(h)    Other Evidence. Each Bid must contain evidence satisfactory to the Debtor and Madison in its sole discretion that the Qualified Bidder is reasonably likely (based on availability of financing, experience and other considerations) to be able to timely consummate the Sale to purchase the Assets if selected as the Successful Bidder (as defined below).

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, in the Debtor's reasonable discretion (with the consent of Madison in its sole discretion) (taking into account the terms and conditions of any assumed debt obligations), and that satisfies the Bid Deadline requirement above, shall constitute a qualified bid (a **"Qualified Bid"**).  In the event that a Bid is determined not to be a Qualified Bid in accordance with the conditions set forth above, the Qualified Bidder shall be notified by the Debtor within three (3) business days of any conditions which it has failed to satisfy and the Qualified Bidder shall have two (2) days from the date of such notification to modify its Bid to render it a Qualified Bid.  If a Qualified Bidder declines or fails to modify its Bid as provided for herein, the Qualified Bidder shall be refunded its Good Faith Deposit and all accumulated interest thereon within three (3) business days.

*Auction*

Only in the event that the Debtor receive at least one (1) Qualified Bid (other than that of any Stalking Horse Bidder) by the Bid Deadline, the Debtor shall conduct an auction (the **"Auction"**) of the Assets to determine the highest and otherwise best bid with respect to the Assets.  No later than December 1, 2010 at 4:00 p.m. (prevailing Eastern time), the Debtor will notify all Qualified Bidders of (i) the highest or otherwise best Qualified Bid (the **"Baseline Bid"**), and (ii) the time and place of the Auction.  The Auction shall commence at 2:00 p.m. (prevailing Eastern time) on December 2, 2010 at Greenberg Traurig, LLP, 1221 Brickell Avenue, Miami, FL 33131.

*Participation in the Auction*

Only the Debtor, any Stalking Horse Bidder, Madison and any Qualified Bidder who has timely submitted a Qualified Bid (and professional advisors to each of these parties) may attend the Auction.  Only Madison, any Stalking Horse Bidder and other Qualified Bidders may make any subsequent Qualified Bids at the Auction.

The Debtor and its professional advisors shall direct and preside over the Auction. Bidding at the Auction shall begin with an amount at least equal to the Baseline Bid, unless there is a Stalking Horse Bidder and in that case an amount equal to the Bid of the Stalking Horse Bidder.  All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders and any Stalking Horse Bidder.  The Debtor shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid (as defined below).

*Terms of Overbids*

An **"Overbid"** is any bid made at the Auction subsequent to the Debtor's announcement of the Baseline Bid.

Each Overbid must comply with the conditions for a Qualified Bid set forth above. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtor accepts a higher Qualified Bid as an Overbid. The Debtor shall announce at the Auction the material terms of each Overbid and the basis for calculating the total consideration offered in each such Overbid.

*Closing the Auction*

Upon conclusion of the bidding process, the Auction shall be closed, and the Debtor (with the consent of Madison in its sole discretion) shall (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale, and (ii) determine, the highest or otherwise best offer for the Assets (the **"Successful Bid"**) and the entity submitting such Successful Bid, (the **"Successful Bidder"**), and the next highest or otherwise best offer after the Successful Bid (the **"Back-Up Bid"**) and the entity submitting such Back-Up Bid (the **"Back-Up Bidder"**), and advise the Qualified Bidders of such determinations. If any Stalking Horse Bidder's final Bid is deemed to be the highest and best Bid at the Auction, such Stalking Horse Bidder shall be the Successful Bidder. Except with respect to any Credit Bid (x) the Back-Up Bid shall remain open and (y) the Back-Up Bidder shall be required to fully perform under such Back-Up Bid, until consummation of the Sale with the Successful Bidder.

*Failure to Close*

In the event the Successful Bidder fails to consummate the Sale as a result of the Successful Bidder's default or breach under the applicable purchase agreement in accordance with the terms of such purchase agreement by the closing date contemplated in such purchase agreement, the Debtor shall: (i) retain the Successful Bidder's Good Faith Deposit as liquidated damages (along with any other rights available under such purchase agreement); and (ii) with the consent of Madison in its sole discretion, be free to enter into a new purchase agreement with the Back-Up Bidder at the purchase price contemplated in the Back-Up Bid.

Following the approval of the sale of the Assets to the Successful Bidder at the Sale Hearing, if such Successful Bidder fails to consummate an approved sale within ten (10) days after entry of an Order approving the Sale (subject to any required governmental constraints), the Debtor shall be authorized, but not required, to deem the Back-Up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtor, with the consent of Madison in its sole discretion, shall be authorized, but not required, to consummate the sale with the Back-Up Bidder submitting such Back-Up Bid without further order of the Bankruptcy Court.

*Consent to Jurisdiction as Condition to Bidding*

All Qualified Bidders, including any Stalking Horse Bidder and Madison, at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have

waived any right to a jury trial in connection with any disputes relating to the Auction and the construction and enforcement of the Qualified Bidder's contemplated Sale documents, as applicable.

*Acceptance of Successful Bid*

The Debtor shall sell the Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtor's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of such Qualified Bid. The Debtor will be deemed to have accepted a Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing.

*Free of Any and All Interests*

All of Debtor's right, title and interest in and to the Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the **"Interests"**), in accordance with section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Assets.

*Credit Bidding*

Madison shall be entitled to credit bid all or a portion of its claims against the Debtor to the fullest extent permissible under section 363(k) of the Bankruptcy Code.

*Sale Hearing*

The Sale Hearing shall be conducted by the Bankruptcy Court on or before December 3, 2010.

*Return of Good Faith Deposit*

The Good Faith Deposit of the Successful Bidder shall be applied to the Purchase Price of such Sale at Closing. The Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until the Termination Date, and thereafter returned to the respective bidders (except for the Back-up Bidder). If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtor shall be entitled to retain the Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder.

*Reservation of Rights*

In order to maximize the value of the Assets to the Debtor's estates, the Debtor reserves the right prior to the Auction to enter into an Agreement for the sale of the Assets with a prospective purchaser (the "**Stalking Horse Bidder**").

*Modifications*

The Bid Procedures may not be modified except with the express written consent of the Debtor and Madison.

The Debtor (with the consent of Madison in its sole discretion) may (a) determine which Qualified Bid, if any, is the highest or otherwise best offer; and (b) reject, at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the sale; or (iii) contrary to the best interests of the Debtor, its estates and its creditors.

*       *       *       *       *

**<u>Exhibit "B"</u>**

[Sale Notice]

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                                          Case No. 10-20941-AJC

Biscayne Park LLC,                                              Chapter 11
Debtor

_____/

## NOTICE OF SALE OF CERTAIN ASSETS AT AUCTION

**PLEASE TAKE NOTICE THAT:**

1.      A hearing will be held on **December 3, 2010** to consider the relief sought by the above captioned debtor and debtor-in-possession (collectively, the **"Debtor"**) in the *Motion of the Debtor for Entry of an Order (A) Approving Bid Procedures Relating to Sale of the Debtor's Assets; (B) Approving the Form and Manner of Notice of Sale by Auction; (C) Authorizing the Sale of Certain Assets of the Debtor Outside the Ordinary Course of Business at Auction Free and Clear of All Liens, Claims, Encumbrances and Interests; (D) Scheduling a Hearing to Consider the Sale; and (E) Granting Related Relief* (the "**Sale Motion**").  The hearing on the Sale Motion may be adjourned without notice other than adjournment in open court.

2.      Objections, if any, to the Sale Motion must: (a) be in writing; (b) comply with the Bankruptcy Rules; (c) be filed with the Clerk of the United States Bankruptcy Court for the Southern District of Florida; and (d) be served so as to be received, no later than November 30, 2010, by: (i) the Debtor; (ii) counsel to the Debtor; (iii) counsel to Madison; (iv) the Office of the United States Trustee; (v) counsel to any Stalking Horse Bidder; and (vi) all parties entitled to notice pursuant to Bankruptcy Rule 2002.

3.      An Auction for the Assets will be held on **December 2, 2010 at 2:00 p.m**. (prevailing Eastern time) at Greenberg Traurig, LLP, 1221 Brickell Avenue, Miami, FL 33131 or at such later time and place as the Debtor notifies all Qualified Bidders who have submitted Qualified Bids.  On [_____], the Bankruptcy Court entered an order approving Bid Procedures relating to the Sale of the Debtor's Assets (the "**Bid Procedures Order**"), which establishes the procedures for conducting the Auction.  Only Qualified Bidders who have submitted Qualified Bids by **November 30, 2010 at 12:00 p.m.** (prevailing Eastern time) in accordance with the Bid Procedures Order may participate in the Auction.  ***All interested parties are invited to submit a Qualified Bid.***

[INSERT SIGNATURE BLOCK]