

## ORDERED in the Southern District of Florida on December 30, 2010.

A. Jay Cristol, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BISCAYNE PARK LLC, | ) | Case No. 10-20941-AJC |
| | ) | |
| Debtor. | ) | |

### ORDER (I) AUTHORIZING SALE OF ASSETS AND (II) CONVEYING ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS

This matter came before Court on December 1, 2010 on the motion (the "Motion") of the

Debtor, Biscayne Park LLC (the "Debtor"), for entry of an order, pursuant to Bankruptcy Code

§§ 363(b) and 363(f), approving and confirming the sale of all of the Debtor's assets described

on Exhibits A, B, C, D and E hereto, including but not limited to the real property described on

Exhibit D hereto located at 8360 Biscayne Boulevard, Miami, FL 33138 and with a location map

on Exhibit E attached to provide clarification (collectively, the "Assets"), other than in the

ordinary course of business and free and clear of all liens, claims, encumbrances, and interests

therein (collectively, the "Claims").

Having considered (a) the Motion, (b) the notice of the Motion, (c) the statements of counsel at the hearing on the Motion, (d) the offer for the Assets submitted by Madison Realty Capital, LP (the "Lender"), (e) the objections to the Motion filed by Peckar and Abramson, P.C. and Christiane Desir, (f) the limited objection of the Debtor to continue the sale, and (g) the record in the above-referenced case, **THIS COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

  A.  On April 26, 2010 (the "Petition Date"), the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor has remained in possession of its assets, and continued to operate its business pursuant to Bankruptcy Code §§ 1107 and 1108.

  B.  On August 16, 2010, this Court entered that certain Final Order Authorizing Debtor:  (A) To Use Cash Collateral; And (B) To Grant Certain Liens And Adequate Protection To Madison Realty Capital LP and Granting Conditional Relief From The Stay On The Termination Date (the "Cash Collateral Order").

  C.  As of the date of this Order, the Lender holds a stipulated and allowed claim in the approximate amount of not less than $10,607,711.54 pursuant to: (1) that certain Mortgage and Security Agreement dated as of November 9, 2006 by and among the Debtor, Eden Garden LLC, Teresa Cardenas, Carlos Cardenas, Dora Cardenas, Magdiel Fernandez, and Martha Fernandez, as mortgagor, and Lender, as a mortgagee, and certain related documents (each as amended, modified or supplemental from time to time, the "Prepetition Documents"); and (2) the Cash Collateral Order.  Pursuant to the Prepetition Documents and the Cash Collateral Order, Lender's claim is secured by a properly perfected, valid and enforceable priority interest in the Assets, subject only to valid and enforceable ad valorem taxes of the Miami-Dade County Tax Collector.

D.        On September 14, 2010, the Debtor filed a Motion for Entry Of An Order:

(1) Approving Bid Procedures Relating To Sale Of Debtor's Assets; (2) Approving The Form

And Manner Of Notice Of Sale By Auction; (3) Authorizing The Sale Of Certain Assets Of

Debtor Outside The Ordinary Course Of Business At Auction, Free And Clear Of All Liens,

Claims, Encumbrances, And Interests; (4) Scheduling A Hearing To Consider The Sale; And (5)

Granting Related Relief (the "Sale Procedures Motion").  Pursuant to that Sale Procedures

Motion, the Debtor sought the entry of a proposed order establishing rules and procedures for

the submission of bids for the Assets.

E.        On October 19, 2010, this Court entered an order: (1) setting an auction of

the Assets for December 1, 2010 (the "Auction") to be followed immediately by a hearing to

authorize the sale of the Assets to the highest bidder at the Auction; (2) establishing bidding

procedures to be utilized in the sale of the Assets attached to the Sale Procedures Motion as

Exhibit A; and (3) approving the notice of the hearing attached to the Sale Procedures Motion as

Exhibit B.

F.        The Debtor sent notice to all creditors and other parties in interest entitled

to such notice, and published notice of the Auction and sale of Assets in appropriate

publications.  Such notice was in accordance with the applicable provisions of the Bankruptcy

Code, as well as Fed. R. Bankr. P. 2002 and 6004, and was, under the circumstances, proper and

adequate notice of the hearing on the sale of the Assets.

G.        At the Auction, the Lender submitted a credit bid of $1,000,000.00 of its

claim against the Debtor for the Assets pursuant to section 363(k) of the Bankruptcy Code, with

the closing and transfer of the Assets to the Purchaser (the "Closing") to occur no later than

December 31, 2010 (the "Offer").  The Offer was the highest and best bid for the Assets at the

Auction.

        H.        In accordance with the terms of the Offer, the Lender has designated

Biscayne Park Acquisition Group LLC, a Delaware limited liability company (the "Purchaser"),

to be the purchaser of the Assets and to take title to the Assets at the Closing.

        I.        The Court now finds that the market for the Assets has been fully explored,

and that the offer of the Purchaser to buy the Assets on the terms and conditions set forth in the

Offer is the highest and the best offer for the Assets.  The terms of the Offer were negotiated by

the parties at arms' length and in good faith with advice of counsel, and are fair and reasonable

under the circumstances.  Without consummation of the sale pursuant to the Offer the value of

the Debtor's assets will continue to diminish rapidly.  Accordingly, the sale of the Assets to the

Purchaser upon the terms of the Offer is in the best interests of the estate, and is approved.

        J.        The Purchaser is a good faith purchaser for value of the Assets within the

meaning of Bankruptcy Code § 363(m), and is entitled to the protections thereof.

        K.        The transactions contemplated by this Order do not involve the sale or

transfer of personally identifiable information as that term is defined in Bankruptcy Code §

101(41A).

        L.        The Lender, pursuant to Bankruptcy Code  § 363(f)(3), has consented to

the transaction contemplated in the Offer.

        M.        The Purchaser's assumption of title to the Assets does not make the

Purchaser a successor to any obligations of the Debtor.  The Purchaser is not responsible for any

such obligations and takes title free and clear of any such obligations.  Any acts or failures to act

of the Debtor with respect to the Debtor's obligations to any person or entity, including governmental entities, remain those solely of the Debtor.

      N.        Notwithstanding anything to the contrary herein, the Purchaser acknowledges that the Assets have been the subject of enforcement action by Miami-Dade County's Department of Environmental Resources Management ("DERM"). The Purchaser is not relieved by this Order of compliance with Miami-Dade County Ordinances relating to environmental conditions with respect to the Assets.

**WHEREFORE, IT IS HEREBY ORDERED THAT:**

      1.        The sale of the Assets to the Purchaser on the terms and conditions set forth in the Offer are hereby approved, and such sale of the Assets may and shall be effected pursuant to Bankruptcy Code §§ 363(b) and 363(f) in accordance with the terms of the Offer.

      2.        This Order shall act as a conveyance document and upon entry of this Order, without necessity of any further action or delivery of documents, the Assets shall be deemed conveyed to the Purchaser free and clear of all Claims (including, without limitation, any mortgages, deeds of trust, executory contracts, leases, pledges, liens, security interests, charges, or other interests or security arrangements of any nature whatsoever, whether arising by agreement or operation of law, including but not limited to any conditional sale or title retention agreements, any assignments, deposit arrangements or leases intended as, or having the effect of, security, tort and product liability claims, and warranty claims), whether such Claims first occurred before, on or after the Petition Date; provided, however, that any valid, enforceable, perfected and first priority lien of the Miami-Dade County Tax Collector for real estate taxes owed with respect to the Assets as of the date hereof shall continue to attach to the Assets. Effective upon entry of this Order, the Purchaser may use and dispose of the Assets free of any

restrictions of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, and in all respects as if this case was not pending.

       3.       This Court hereby stays, restrains and enjoins all holders of Claims from taking any action to assert or enforce such Claims, or any claim secured thereby, against the Assets, the Purchaser, or the Purchaser's successors and assigns.

       4.       Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized and directed to accept any and all documents and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by this Order.

       5.       Upon the filing of this Order with the clerk of the court of the respective counties in which the Assets are located or in which any Claims shall have been filed on or in the Assets, the recording office for the real property records for the county where the Assets are located, or the secretary of state for any state in which any Claims shall have been filed on or in the Assets, this Order shall constitute, as applicable, a conveyance of such Assets or a satisfaction and release of all such Claims.  The Purchaser is authorized to file this Order (or an abstract thereof) with any such filing or recording office as necessary or appropriate to evidence such conveyances, satisfactions or releases, and this Order is deemed to be in recordable form sufficient to be placed in the filing or recording system maintained by any such filing or recording office without the requirement of recording any further or additional documents.   The Purchaser is hereby also authorized to prepare and file UCC-3 termination statements, mortgage terminations or amendments as appropriate, to effectuate the provisions of this Order.

       6.       Notwithstanding anything to the contrary contained herein, Purchaser agrees that the Assets sold to the Purchaser shall not include:  (a) the mobile home with

identification number BR551061249 of Christiane Desir, located at 8500 Biscayne Boulevard,

Lot # F 261; and (b) the $230,000 supersedeas bond posted by Wal-Mart in Miami-Dade County

Circuit Court under Case Number 08-67361 CA 22.

      7.      Effective upon entry of this Order: (a) the Debtor and any other entities in

possession of any of the Assets are authorized and directed to immediately turn over possession

of all such Assets, including any and all cash and books and records, to the Purchaser: and (b)

the Debtor is authorized and directed to execute and deliver all documents and to take all other

actions as may be necessary or appropriate to consummate the transactions referenced in this

Order.

      8.      This Order is a final order and the period in which an appeal must be filed

shall commence upon the entry hereof.  Notwithstanding the possible applicability of Federal

Rules of Bankruptcy Procedure 6004(h), 7062, 9014, or otherwise, the terms and conditions of

this Order shall be effective immediately.

      9.      This Court shall retain jurisdiction over the Assets for the purpose of:  (a)

determining the validity, enforceability, or priority of any Claim; (b) enforcing this Order; and

(c) determining any disputes under the Offer or this Order.

# # #

Submitted by:

Aaron P. Honaker
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, Florida 33131
Telephone: 305-579-0500
Facsimile: 305-579-0717

    and

Andrew R. Cardonick, Esq.

Greenberg Traurig, LLP
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
Telephone: 312.456.8400
Facsimile: 312.456.8435
Admitted *Pro hac vice*

Counsel for Madison Realty Capital, LP

*(Attorney Honaker shall serve a conformed copy of this Order upon all parties entitled to service, and shall file a certificate of service with the Court.)*

# EXHIBIT A

All of the following property of Biscayne Park, LLC (the "Debtor") whether acquired or in existence before, on, or after the April 26, 2010 filing by the Debtor of a petition for relief under chapter 11 of the Bankruptcy Code:

(a)     the real property located at 8360 Biscayne Boulevard, Miami, FL, 33138 and/or described on Exhibit D to this Order and/or shown on Exhibit E to this Order (the "Premises");

(b)     all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Premises (hereinafter, collectively, the "Improvements");

(c)     all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of the Debtor (the "Mortgagor") of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(d)     all machinery, equipment, fixtures (including but not limited to all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation and occupancy of the Premises and the Improvements (hereinafter, collectively, the "Equipment"), and the right, title and interest of Mortgagor in and to any of the Equipment;

(e)     all awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to assets described in paragraphs (a) through (i) herein (the "Mortgaged Property"), whether from the exercise of the right of eminent domain (including but not limited to any transfer

made in lieu of or in anticipation of the exercise of said right), or for a change of grade, or for any other injury to or decrease in the value of the Mortgaged Property;

(f)    except as otherwise provided in this subparagraph (f), all leases and other agreements affecting the use, enjoyment or occupancy of the Premises and the Improvements heretofore now or hereafter entered into (hereinafter, collectively, the "Leases") and all rents, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Premises and the Improvements (hereinafter, collectively, the "Rents") and all proceeds from the sale or other disposition of the Leases.  Notwithstanding anything to the contrary in this  subparagraph (f), the Assets shall not include any leases of trailer or commercial lots on the real property described in Exhibit D to this Order and/or shown on Exhibit E to this Order (the "Trailer/Commercial Leases"), but shall include Rents from the Trailer/Commercial Leases and all proceeds from the sale or other disposition of the Trailer/Commercial Leases;

(g)    all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property;

(h)    the right, in the name and on behalf of Mortgagor, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of the Lender in the Mortgaged Property; and

(i)    all accessions to, substitutions for and replacements, proceeds and products of the foregoing, together with all cash (including, without limitation, all cash collateral, as that term is defined in Bankruptcy Code § 363(a)), books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records related thereto.

# EXHIBIT B

All of the following property of Biscayne Park, LLC (the "Debtor"), whether acquired or in existence before, on, or after the April 26, 2010 filing by the Debtor of a petition for relief under chapter 11 of the Bankruptcy Code:

1.  All rents, issues, profits, revenues, royalties, rights and benefits derived from the real property located at 8360 Biscayne Boulevard, Miami, FL, 33138 and/or described on Exhibit D and/or shown on Exhibit E to this Order (the "Premises") from time to time accruing, whether under leases or tenancies now existing or hereafter created.  Notwithstanding anything to the contrary in this subparagraph (1), the Assets shall not include any leases of trailer or commercial lots on the real property described in Exhibit D to this Order and/or shown on Exhibit E to this Order (the "Trailer/Commercial Leases"), but shall include rents, issues, profits, revenues, royalties, rights and benefits from the Trailer/Commercial Leases and all proceeds from the sale or other disposition of the Trailer/Commercial Leases.

2.  All causes of actions and judgments pursuant thereto relating to the Premises, and all judgments, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the Premises or any part thereof under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Premises or the improvements thereon or any part thereof, or to any rights appurtenant thereto, including any award for change of grade of streets.

3.  All policies of insurance insuring the Debtor or the Premises or the improvements located thereon, together with any proceeds therefrom, together with any abstracts of title covering the Premises.

4.  All contract rights, causes of action, claims, demands of Debtor.

5.  All licenses, easements, permits and development rights pertaining to the Premises.

6.  All personal property (tangible and intangible), fixtures and equipment now or hereafter located on or used in connection with the Premises.

7.  All accounts receivable, notes receivable, general intangibles, inventory and equipment of every kind of Debtor relating to the Premises.

8.  All building materials delivered to the Premises, including, without limitation, materials for infrastructure improvements.

9.  All contracts to sell the Premises or any portion thereof and all deposits under such contracts.

10.  All commitments to make mortgage loans on the Premises, or any portion thereof.

11.  All plans and specifications and architectural materials pertaining to the Premises and its present or future improvements.

12.     All bulkheads, fill, soil, minerals and bridges located on the Premises.

13.     All furnaces, boilers, oil burners, radiators and piping, coal, plumbing and bathroom fixtures, refrigeration, air-conditioning and sprinkler systems, washtubs, sinks, gas and electric fixtures, stoves, ranges, awnings, washers, dryers, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, plants, shrubbery and landscaping and all other equipment and machinery, appliances, fittings and fixtures of every kind in or used in the operation of the buildings standing on the Premises, together with any and all replacements thereof and additions thereto.

# EXHIBIT C

All of the following property of Biscayne Park, LLC (the "Debtor"), whether acquired or in existence before, on, or after the April 26, 2010 filing by the Debtor of a petition for relief under chapter 11 of the Bankruptcy Code (hereinafter all of the foregoing are sometimes collectively referred to as the "Mortgaged Property"):

(a)     all buildings and other structures and improvements now or hereafter located on the real property located at 8360 Biscayne Boulevard, Miami, FL, 33138 and/or described on Exhibit D to this Order and/or shown on Exhibit E to this Order (the "Premises");

(b)     all of the estate, right, title, claim or demand of any nature whatsoever of Debtor, either in law or in equity, in possession or expectancy, in and to the Premises and Improvements or any part thereof;

(c)     all easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments, and appurtenances, reversion or reversions, remainder or remainders of any nature whatsoever, in any way belonging, relating or pertaining to the Premises (including, without limitation, any and all development rights, air rights or similar or comparable rights of any nature whatsoever now or hereafter appurtenant to the Premises or now or hereafter transferred to the Premises) and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises to the center line thereof;

(d)     all machinery, apparatus, equipment, fittings, fixtures and other property of every kind and nature whatsoever and all additions thereto and renewals and replacements thereof, and all substitutions therefor now owned or hereafter acquired by Debtor, or in which Debtor has or shall have an interest, now or hereafter located upon or in, or attached to, any portion of the Premises and Improvements, or appurtenances thereto, and used or usable in connection with the present or future operation and occupancy of the Premises and Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Premises and Improvements (collectively, the "Equipment") (other than fixtures, equipment, machinery or other property of tenants under any lease of or rental agreement for space in the premises and Improvements), including the interest of Debtor in all of the aforesaid which are subject to lease agreements or other service contracts (but excluding the interest of the lessor or owner of such items), and including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a sale of any of the foregoing, and the right, title and interest of Debtor in and to any of the Equipment which may be subject to any security agreements (as defined in the Uniform Commercial Code of the State in which the Premises and Improvements are located; the "Uniform Commercial Code"), and all inventory, accounts, chattel paper, documents, equipment, fixtures, farm products, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described hereinabove, all of which are hereby declared and shall be deemed to be fixtures and accessions to, and a part of, the Premises and Improvements as between the parties hereto and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described;

(e)    all awards or payments, including interest thereon, and the right to receive the same, which may be made with respect to the Premises, Improvements and Equipment, whether from the exercise of the right of eminent domain (including any transfer made in lieu of the exercise of said right), for a change in grade or for any other injury to or decrease in the value of the Premises and Improvements and the reasonable attorneys' fees, costs and disbursements incurred in connection with the collection of such award or payment;

(f)    the interest of the owner of the Mortgaged Property in and to all leases and other agreements affecting the use or occupancy of the Premises and Improvements or any part thereof now or hereafter entered into (including any such agreements entered into after filing by or against Borrower of a petition for relief under 11 U.S.C. Section 101 et seq. (the "Bankruptcy Code"), as the same may be amended from time to time) (the "Leases") and absolutely and presently the right to receive and apply the income, rents, issues, cash collateral, revenues, royalties, benefits and profits of the Premises and Improvements from time to time accruing, including, without limitation, all payments under Leases or tenancies, proceeds of insurance, additional rents, lease termination fees, tenant security deposits and escrow funds paid or accruing before or after the filing by or against Borrower of a petition for relief under the Bankruptcy Code (the "Rents") to the payment of the Debt.  Notwithstanding anything to the contrary in this  subparagraph (f), the Assets shall not include any leases of trailer or commercial lots on the real property described in Exhibit D to this Order and/or shown on Exhibit E to this Order (the "Trailer/Commercial Leases"), but shall include Rents from the Trailer/Commercial Leases and all proceeds from the sale or other disposition of the Trailer/Commercial Leases;

(g)    all proceeds of and any unearned premiums on any insurance policies covering the Premises and Improvements (whether or not such policies are specifically required hereunder and/or the requirement for such policies had been theretofore waived or deferred by Lender), including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Premises and improvements;

(h)    the right, in the name and on behalf of Debtor, to appear in and defend any action or proceeding brought with respect to the Premises and Improvements and to commence any action or proceeding to protect interests in the Premises and Improvements;

(i)    all refunds, rebates or credits in connection with the reduction of taxes as a result of tax certiorari or any applications or proceedings for deduction;

(j)    all trade names, trademarks, service marks, logos, copyrights, goodwill, books and records and other general intangibles specific to or used in connection with the operation of the Mortgaged Property; and

(k)    all and singular the rights, members and appurtenances whatsoever, in any way belonging, relating or appertaining to any of the Premises and Improvements hereinabove mentioned or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Debtor.

# EXHIBIT D

Commence at the Southeast corner of the Northeast ¼ of Section 7, Township 53 South, Range 42 East, Tallahassee Meridian in Florida; thence West along the South Line of the Northeast ¼ of the Northwest ¼ of the aforesaid Section 7 and along the South line of Lot 4, of a subdivision of the Northwest ¼ of Section 7 as aforesaid, according to plat thereof recorded in Plat Book B at Page 3, of the Public Records of Dade County, Florida, for a distance 545 feet to a point; thence North parallel to the East line of the Northeast ¼ of the Northwest ¼ of the aforesaid Section 7 for a distance of 25 feet for the Point of Beginning of the tract of land herein described; thence continue North parallel to the East line of Northeast ¼ of the Northwest ¼ of the aforesaid Section 7 for a distance of 304.09 feet to a point on the North line of Lot 4 of plat recorded in Plat Book B at Page 3 of the Public Records of Miami-Dade County, Florida; thence East along the North line of the aforesaid Lot 4 a distance of 90 feet to a point; thence South parallel to and 455 feet West of the East line of the Northeast ¼ of the Northwest ¼ of the aforesaid Section 7 for a distance of 304.14 feet to a point 25.00 feet North of the South line of the aforesaid Lot 4; thence West parallel to and 25.00 feet North of the South line of the aforesaid Lot 4 for a distance of 90.00 feet to the Point of Beginning of the tract of land herein described.

Also described as Lot 11 of unrecorded plat made by Watson & Garris, S. E., dated August 1933, of Lot 4 of Subdivision in the Northwest ¼ of Section 7, Township 53 South, Range 42 East, Tallahassee Meridian in Florida, by which deeds have heretofore been made.

And
The North ½ of Lot 5, TUTTLES SUBDIVISION in the Northeast ¼ of the Northwest ¼ of Section 7, Township 53 South, Range 42 East, (Map of the Northwest ¼ of Section 7, Plat Book B, Page 3).

And
The South ½ of Lot 5 described as follows:  Commencing at the Southeast corner of Lot Five of the Subdivision of the Northwest ¼ of Section, Township 53 South, Range 42 East, according to the survey made by J. E. Frederick, C. E., Plat of which is recorded in Plat Book B, on Page 3, Land Records, in the Office of the Clerk of the Circuit Court, in and for Dade County, Florida; and run from said point North 255.00 feet; thence West 930.00 feet, more or less, to the right-of-way of the Florida East Coast Railway; thence Southwesterly along said right-of-way 212.00 feet, more or less, to the center, or thread, of Little River; thence Southeasterly along the center of said Little River 115.00 feet, more or less, to South line of said Lot 5; thence 920.00 feet, more or less, to the Place of Beginning.

And
Lot 6 in the Subdivision of the Northwest ¼ of Section 7, Township 53 South, Range 42 East, according to the plat thereof, recorded in Plat Book B, at Page 3, of the Public Records of Dade County, Florida, except the following described part of said Lot 6; West 400.00 feet of East 435.00 feet thereof.

EXCEPTING THEREFROM THE FOLLOWING DESCRIBED PROPERTY:

The East 35.00 feet of Lot 5 of TUTTLES SUBDIVISION, according to the Plat thereof, recorded in Plat Book B, Page 3, of the Public Records of Miami-Dade County, Florida.

# EXHIBIT E

